Dana L. Sullivan
Oregon Bar No. 944834
**BUCHANAN ANGELI ALTSCHUL**
**& SULLIVAN LLP**
921 SW Washington Street, Suite 516
Portland, Oregon 97205
Telephone:     503.974.5015
Facsimile:     971.230.0337
Email:          dana@baaslaw.com

Michael A. Josephson (*pro hac vice forthcoming*)
Andrew W. Dunlap (*pro hac vice forthcoming*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:     713.352.1100
Facsimile:     713.352.3300
Emails:        mjosephson@mybackwages.com
               adunlap@mybackwages.com

Richard J. (Rex) Burch (*pro hac vice forthcoming*)
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone:     713.877.8788
Email:          rburch@brucknerburch.com

*Attorneys for Schmitt and*
*the Hourly Employees*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JACOB SCHMITT, Individually and for Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>VESTAS-AMERICAN WIND TECHNOLOGY, INC.,<br><br>    Defendant. | Civil No. _____<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);**<br><br>**(2) Failure to Pay Overtime Wages (Illinois Minimum Wage Law, 820** |

ILCS 105/1, *et seq.*).

**(3) Failure to Pay Earned Wages (Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*).**

**DEMAND FOR JURY TRIAL**

---

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      Jacob Schmitt (Schmitt) brings this class and collective action to recover unpaid wages and other damages from Vestas-American Wind Technology, Inc. (Vestas) for violations of the Fair Labor Standards Act (FLSA) Illinois Minimum Wage Law (IMWL) and the Illinois Wage Payment and Collection Act (IWPCA).

2.      Vestas employed Schmitt as one of its Hourly Employees (defined below) in Illinois, Oregon, and Indiana.

3.      Vestas pays Schmitt and the other Hourly Employees by the hour.

4.      Schmitt and the other Hourly Employees regularly work more than 40 hours a week.

5.      But Vestas does not pay Schmitt and its other Hourly Employees for all their hours worked, including overtime hours.

6.      Instead, Vestas requires Schmitt and the other Hourly Employees to mark that they took a "meal break" each workday, regardless of whether they actually received a *bona fide* meal break (Vestas's "meal deduction policy").

7.      Thus, Vestas does not pay Schmitt and the other Hourly Employees for that time.

8.      But Schmitt and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9.    Instead, Vestas requires Schmitt and its other Hourly Employees to remain on-duty and perform compensable work throughout their shifts and Vestas continuously subjects them to work interruptions during their unpaid "meal breaks."

10.    Vestas's meal deduction policy violates the FLSA and IMWL by depriving Schmitt and the other Hourly Employees of overtime wages for all overtime hours worked.

11.    Likewise, Vestas's meal deduction policy violates the IWPCA by depriving Schmitt and the other Hourly Employees of all their earned wages (at their agreed hourly rates) for all hours worked.

### JURISDICTION & VENUE

12.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.    This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14.    This Court has general personal jurisdiction because Vestas maintains its principal place of business in Portland, Oregon.

15.    Venue is proper because Vestas maintains its principal place of business in Portland, Oregon, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

### PARTIES

16.    Schmitt worked for Vestas as a Technician 2 and Lead Technician from approximately September 2016 until June 2024 primarily in and around Tiskilwa, Illinois, but also in Oregon and Indiana.

17.    Specifically, Schmitt worked for Vestas as a Technician 2 from approximately September 2016 until late 2023 and as a Lead Technician from late 2023 until June 2024.

18.     Throughout his employment, Vestas classified Schmitt as non-exempt and paid him by the hour.

19.     Throughout his employment, Vestas subjected Schmitt to its common practice of requiring that he mark he took a 30-minute "meal break" each workday.

20.     But throughout his employment, Schmitt did not actually receive or have the opportunity to take *bona fide* meal breaks.

21.     Schmitt brings this class action on behalf of himself and other similarly situated hourly, non-exempt Vestas employees who were subject to Vestas's meal deduction policy.

22.     The putative collective of similarly situated employees under the FLSA is defined as:

**All hourly Vestas employees who were eligible to take a 30-minute meal break at any time during the last 3 years until final resolution of this action (the "FLSA Collective Members").[1]**

23.     The putative class of similarly situated employees under the IMWL is defined as:

**All hourly Vestas employees in Illinois who were eligible to take a 30-minute meal break at any time during the last 3 years until final resolution of this action (the "IMWL Class Members").**

24.     The putative class of similarly situated employees under the IWPCA is defined as:

**All hourly Vestas employees in Illinois who were eligible to take a 30-minute meal break at any time during the last 10 years until final resolution of this action (the "IWPCA Class Members").**

25.     The FLSA Collective Members, IMWL Class Members, and the IWPCA Class Members are collectively referred to as the "Hourly Employees."

26.     Vestas is a California corporation headquartered in Portland, Oregon.

---

[1] This definition excludes former and current Vestas Field Support Coordinators to the extent their claims were settled in *Molengraaf v. Vestas-American Wind Technology, Inc.*, Case No. 3:22-cv-01825 (D. Or.).

27.     Vestas may be served through its registered agent: **C T Corporation System, 780 Commercial St. SE, Ste. 100, Salem, Oregon 97301**.

## FLSA COVERAGE

28.     At all relevant times, Vestas was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

29.     At all relevant times, Vestas was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

30.     At all relevant times, Vestas was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because Vestas had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cellphones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce.

31.     At all relevant times, Vestas has had an annual gross volume of sales made or business done of not less than $1,000,000.

32.     At all relevant times, Schmitt and the other Hourly Employees were Vestas's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

33.     At all relevant times, Schmitt and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

34.     Vestas is a wind energy company that touts itself as "[t]he global leader in sustainable energy solutions . . . [and] the world's leading wind service provider, offering lifetime management of wind energy assets to maximise the return on our customers' investments."[2]

---

[2] https://www.vestas.com/en and https://www.vestas.com/en/energy-solutions/service (last visited December 18, 2024).

Page | 5 – ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

35.     To meet its business objectives, Vestas employs workers, like Schmitt and the other Hourly Employees, to construct and provide ongoing service and maintenance to wind turbines on behalf of its customers.

36.     Vestas classifies them as non-exempt and pays them by the hour.

37.     While exact job titles and precise job duties may differ, Schmitt and the other Hourly Employees are all subject to Vestas's same or similar meal deduction policy for similar work.

38.     For example, Schmitt worked for Vestas as a Technician 2 from approximately September 2016 until late 2023 and as a Lead Technician from approximately late 2023 until June 2024, primarily at the Crescent Ridge Wind Project in Tiskilwa, Illinois, but also in Oregon and Indiana.

39.     As a Technician 2, Schmitt's primary job duties included climbing wind turbine towers to ensure they remain in good working order, performing maintenance and repair of the turbines, such as greasing the turbines and changing filters, and monitoring and responding to faults indicated by turbine sensors.

40.     As a Lead Technician, Schmitt's job duties remained the same with some additional coordination of other team members, while climbing the turbine towers.

41.     Throughout his employment, Vestas classified Schmitt as non-exempt and paid him by the hour.

42.     Indeed, Vestas agreed to pay Schmitt approximately $30 an hour.

43.     Throughout his employment, Vestas required Schmitt to report his "on the clock" hours worked to Vestas through its designated timekeeping system.

44.     Thus, Vestas's records reflect the hours Schmitt worked "on the clock" each workweek.

45.     Indeed, Schmitt typically worked approximately 8.5 to 10.5 hours a day for 5 days a week (42.5 to 52.5 hours a workweek).

46.     And during weeks that Schmitt had to respond and troubleshoot tower faults "off the clock" and without compensation, which occurred a couple times each month, Schmitt would have to work even further overtime hours.

47.     But Vestas did not pay Schmitt for all his hours worked.

48.     Instead, throughout his employment, Vestas subjected Schmitt to its meal deduction policy.

49.     Specifically, Vestas required Schmitt to mark that he took a 30-minute "meal break" each workday, regardless of whether he actually received a *bona fide* meal break, or it would not approve his hours.

50.     Thus, Vestas did not pay Schmitt for that time.

51.     But throughout his employment, Schmitt did not actually receive *bona fide* meal breaks.

52.     Instead, Schmitt was forced to routinely spend his unpaid "meal breaks" performing his regular job duties, while on turbine towers hundreds of feet off the ground, for Vestas's—not his own—predominant benefit.

53.     As a result of its meal deduction policy Vestas failed to pay Schmitt for all hours worked, including overtime hours, in violation of the FLSA and IMWL.

54.     As a result of its meal deduction policy Vestas also failed to pay Schmitt earned wages (at his agreed hourly rate) for all hours worked in violation of the IWPCA.

55.     Schmitt and the other Hourly Employees perform their jobs under Vestas's supervision and use tools, equipment, PPE, and technology Vestas approves and supplies.

56.     Vestas requires Schmitt and the other Hourly Employees to follow and abide by common work, time, pay, meal break, and overtime policies and procedures.

57.    At the end of each pay period, Schmitt and the other Hourly Employees receive wages from Vestas that are determined by common systems and methods that Vestas selects and controls.

58.    Vestas requires Schmitt and its other Hourly Employees to record their "on the clock" hours worked using Vestas's uniform timeclock system.

59.    Thus, just as Vestas's records reflect the number of hours Schmitt worked each workweek, Vestas also has records of the number of hours the other Hourly Employees work "on the clock" each workweek.

60.    But, like Schmitt, Vestas fails to pay its other Hourly Employees for all their hours worked.

61.    Indeed, Vestas uniformly subjects its other Hourly Employees to the same meal deduction policy it imposed on Schmitt.

62.    Specifically, just as with Schmitt, Vestas requires them to mark that they took a 30-minute so called "meal break" each workday, whether or not they actually receive or take a *bona fide* meal break.

63.    Vestas simply assumes Schmitt and its other Hourly Employees receive a *bona fide* 30-minute meal break each shift they work.

64.    But, like Schmitt, the other Hourly Employees do not actually receive *bona fide* meal breaks.

65.    Instead, like Schmitt, Vestas requires its other Hourly Employees to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

66.    And, like Schmitt, Vestas subjects its other Hourly Employees to work interruptions during their unpaid "meal breaks."

67.    Because of these work duties and interruptions, Schmitt and the other Hourly Employees are not free to engage in personal activities during their unpaid "meal breaks."

68.    In other words, Schmitt and the other Hourly Employees are not relieved of their normal job duties during their unpaid "meal breaks."

69.    Rather, during their unpaid "meal breaks," Schmitt and the other Hourly Employees are forced to remain on duty and perform their regular duties and responsibilities.

70.    Thus, Schmitt and the other Hourly Employees routinely spend their unpaid "meal breaks" performing work for Vestas's—not their own—predominant benefit.

71.    This unpaid time is compensable under the FLSA and IMWL because Vestas knew, or should have known: (1) Schmitt and its other Hourly Employees were performing unpaid work during their "meal breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted meal period; (3) they were not completely relieved of all duties during their unpaid "meal breaks"; (4) they entirely skipped their meal periods due to work demands; (5) their unpaid "meal breaks" were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid meal periods because of constant work interruptions; (7) they remained on Vestas's premises or under Vestas's supervision during their unpaid "meal breaks"; and/or (8) they spent their unpaid "meal breaks" performing their wind turbine service and maintenance duties for Vestas's predominant benefit.

72.    Vestas fails to exercise its duty as Schmitt's and the other Hourly Employees' employer to ensure they are not performing work that Vestas does not want performed during their unpaid "meal breaks."

73.    And Vestas knows, should know, or recklessly disregards whether Schmitt and its other Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks."

74.    Indeed, Schmitt and other Hourly Employees complained to their supervisors, HR, and/or Vestas management about being forced to work during their unpaid "meal breaks."

75.    Thus, Vestas requested, suffered, permitted, or allowed Schmitt and its other Hourly Employees to work during their unpaid "meal breaks."

76.    Despite accepting the benefits, Vestas does not pay Schmitt and its other Hourly Employees for the compensable work they perform during their unpaid 30-minute "meal breaks."

77.    Thus, under Vestas's meal deduction policy, Schmitt and the other Hourly Employees are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA and IMWL.

78.    Like Schmitt, each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

79.    Indeed, like Schmitt, the other Hourly Employees typically work 8.5 to 10.5 hours a day for 5 days a workweek (42.5 to 52.5 hours a workweek).

80.    When Schmitt and the other Hourly Employees worked more than 40 hours in a workweek, Vestas did not pay them overtime wages for all overtime hours worked because Vestas failed to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in violation of the FLSA and IMWL.

81.    Likewise, Vestas failed to pay Schmitt and the other Hourly Employees for all hours worked, including overtime hours, at their agreed rates, in violation of the IWPCA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

82.    Schmitt brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

83.    Like Schmitt, the other Hourly Employees are victimized by Vestas's meal deduction policy.

84.    Other Hourly Employees worked with Schmitt and indicated they were paid in the same manner, performed similar work, and were subject to Vestas's same meal deduction policy.

85. Based on his experience, Schmitt is aware Vestas's meal deduction policy was imposed on other Hourly Employees.

86. The putative classes of Hourly Employees are so numerous that joinder of each putative class member in a single lawsuit would be impracticable.

87. The Hourly Employees are similarly situated in the most relevant respects.

88. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime wages for all hours worked over 40 in a workweek.

89. The only relevant inquiry is whether the Hourly Employees were subject Vestas's meal deduction policy.

90. Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

91. Rather, Vestas's meal deduction policy renders Schmitt and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages and overtime pay.

92. Vestas's records reflect the number of hours the Hourly Employees recorded worked each week.

93. Vestas's records further reflect it deducted 30 minutes a day from the Hourly Employees' recorded work time for so-called "meal breaks."

94. The back wages owed to Schmitt and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

95. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Vestas's records, and there is no detraction from the common nucleus of liability facts.

96.    Therefore, the issue of damages does not preclude class or collective treatment.

97.    Schmitt's experiences are therefore typical of the experiences of the other Hourly Employees.

98.    Schmitt has no interest contrary to, or in conflict with, the Hourly Employees that would prevent class or collective treatment.

99.    Like each Hourly Employee, Schmitt has an interest in obtaining the unpaid wages owed under federal and Illinois law.

100.    Schmitt and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

101.    Schmitt retained counsel with significant experience in litigating complex class and collective actions.

102.    A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

103.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Vestas will reap the unjust benefits of violating the FLSA, IMWL, and IWPCA.

104.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

105.    Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Vestas.

106.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

107.    Accordingly, a class and collective action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Hourly Employees are entitled.

108.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

109.    Among the common questions of law and fact are:

(a)    Whether Vestas engaged in a policy and practice of requiring deduction of 30 minutes a workday from the Hourly Employees' recorded work time for so-called "meal breaks";

(b)    Whether Vestas knew, or had reason to know, it requested, suffered, permitted, or allowed the Hourly Employees to work during their unpaid "meal breaks";

(c)    Whether Vestas failed to pay the Hourly Employees overtime wages for all overtime hours worked in violation of the FLSA and IMWL; and

(d)    Whether Vestas failed to pay the Hourly Employees all their earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA.

110.    Schmitt knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

## VESTAS'S FLSA VIOLATIONS WERE WILLFUL

111.    Vestas knew it was subject to the FLSA's overtime provisions.

112.    Vestas knew the FLSA required it to pay non-exempt employees, including Schmitt and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

113.    Vestas knew Schmitt and the other Hourly Employees were non-exempt employees entitled to overtime pay.

114.    Vestas knew it paid Schmitt and the other Hourly Employees by the hour.

115.    Vestas knew Schmitt and the other Hourly Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Vestas required them to record their "on the clock" hours worked using its timeclock system.

116.    Vestas knew the FLSA required it to pay employees, including Schmitt and the other Hourly Employees, for all hours they performed compensable work.

117.    Vestas knew that as Schmitt's and the other Hourly Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that Vestas did not want performed.

118.    Vestas knew it failed to provide Schmitt and the other Hourly Employees with *bona fide*, uninterrupted meal breaks.

119.    Vestas knew Schmitt and the other Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

120.    Vestas knew Schmitt and the other Hourly Employees regularly worked during their unpaid "meal breaks."

121.    Vestas knew Schmitt and the other Hourly Employees regularly spent their unpaid "meal breaks" performing their regular job duties for Vestas's predominant benefit.

122.    Indeed, Schmitt and the other Hourly Employees complained to Vestas's management, HR, and/or their supervisors about being forced to work during their unpaid "meal breaks."

123.    Thus, Vestas knew it requested, suffered, permitted, or allowed Schmitt and the other Hourly Employees to work during their unpaid "meal breaks."

124.    In other words, Vestas knew, should have known, or recklessly disregarded whether Schmitt and the other Hourly Employees performed compensable work during their unpaid "meal breaks."

125.    Nonetheless, Vestas required Schmitt and the other Hourly Employees to mark they took a 30-minute "meal break" each workday.

126.    In other words, Vestas knew, should have known, or recklessly disregarded whether it did not pay Schmitt and the other Hourly Employees for all the hours they performed compensable work.

127.    Vestas's decision to require Schmitt and the other Hourly Employees to record a 30-minute unpaid "meal break" each workday, regardless of whether they actually received it, was neither reasonable, nor was it made in good faith.

128.    Vestas's failure to pay Schmitt and the other Hourly Employees overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

129.    Vestas knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Schmitt and the other Hourly Employees of overtime wages for all hours worked after 40 in a workweek in willful violation of the FLSA.

130.    Vestas knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA.

## <u>COUNT I</u>
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

131.    Schmitt brings his FLSA claim on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

132.    Vestas violated, and is violating, the FLSA by employing non-exempt employees (Schmitt and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks and/or at the beginning and end of their shifts.

133.    Vestas's unlawful conduct harmed Schmitt and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

134.    Accordingly, Vestas owes Schmitt and the other FLSA Collective Members the difference between the overtime wages actually paid and the proper overtime wages actually earned.

135.    Because Vestas knew, or showed reckless disregard for whether, its policies violated the FLSA, Vestas owes these wages for at least the past 3 years.

136.    Vestas is also liable to Schmitt and the other Hourly Employees for an additional amount equal to all unpaid wages as liquidated damages.

137.    Finally, Schmitt and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

<u>**COUNT II**</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL**
**PURSUANT TO 820 ILCS 105/1, *ET SEQ.***
**(IMWL CLASS)**

138.    Schmitt brings his IMWL claims as a class action on behalf of himself and the other IMWL Class Members.

139.    Vestas's conduct violates the IMWL (820 ILCS 105/1, *et seq*.).

140.    At all relevant times, Vestas was subject to the IMWL because Vestas was (and is) an "employer" within the meaning of the IMWL. 820 ILCS 105/3(c)

141.    At all relevant times, Vestas employed Schmitt and the other IMWL Class Members as its covered "employees" within the meaning of the IMWL. 820 ILCS 105/3(d).

142.    The IMWL requires employers, like Vestas, to pay non-exempt employees, including Schmitt and the other IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 820 ILCS 105/4a.

143.    Schmitt and the other IMWL Class Members are entitled to overtime wages under the IMWL.

144.    Vestas violated, and is violating, the IMWL by failing to pay Schmitt and the other IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks. *See* 820 ILCS 105/4a.

145.    Vestas's unlawful conduct harmed Schmitt and the other IMWL Class Members by depriving them of the overtime wages they are owed.

146.    Accordingly, Schmitt and the IMWL Class Members are entitled to recover the difference between the overtime wages actually paid and the proper overtime wages actually earned, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 105/12(a).

<u>**COUNT III**</u>

**FAILURE TO PAY ALL EARNED WAGES UNDER THE IWPCA
PURSUANT TO 820 ILCS 115/1, *ET SEQ.*
(IWPCA CLASS)**

147.    Schmitt brings his IWPCA claim on behalf of himself and the other IWPCA Class Members.

148.    Vestas's conduct violates the IWPCA (820 ILCS 115/1, *et seq.*).

149.    At all relevant times, Vestas was subject to the IWPCA because Vestas was (and is) an "employer" within the meaning of the IWPCA.

150.    At all relevant times, Vestas employed Schmitt and the other IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

151.    The IWPCA requires employers, like Vestas, to pay employees, including Schmitt and the other IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

152.    During the course of their employment, Vestas agreed to pay Schmitt and each IWPCA Class Member an hourly rate for all the hours of work they performed.

153.    Schmitt and each IWPCA Class Member accepted Vestas's offer.

154.    But during the course of their employment, Vestas failed to pay Schmitt and the other IWPCA Class Members for all the time they worked at the hourly rates Vestas agreed to pay them because Vestas failed to include time they worked during their "meal breaks" in their total number of hours worked in a given workweek.

155.    Vestas violated, and is violating, the IWPCA by failing to pay Schmitt and the other IWPCA Class Members all their earned wages (at the hourly rates Vestas agreed to pay them) for all the hours of work they performed for Vestas's benefit.

156.    Vestas's unlawful conduct harmed Schmitt and the other IWPCA Class Members by depriving them of the earned wages they are owed.

157.    Accordingly, Schmitt and the other IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

### JURY DEMAND

158.    Schmitt demands a trial by jury on all Counts.

**RELIEF SOUGHT**

WHEREFORE, Schmitt, individually and on behalf of the other Hourly Employees, seeks the following relief:

(a)    An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

(b)    An Order allowing this action to proceed as a class action under the IMWL and IWPCA and certifying the putative classes of Hourly Employees;

(c)    An Order appointing Schmitt and his counsel to represent the interests of the Hourly Employees;

(d)    An Order finding Vestas liable to Schmitt and the other Hourly Employees for unpaid overtime wages, plus liquidated damages in amount equal to their unpaid wages under the FLSA;

(e)    An Order finding Vestas liable to Schmitt and the other IMWL Class Members for unpaid overtime wages owed under the IMWL, plus treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

(f)    An Order finding Vestas liable to Schmitt and the IWPCA Class Members for unpaid earned wages owed under the IWPCA, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

(g)    An Order awarding attorneys' fees, costs, and expenses;

(h)    A Judgment against Vestas awarding Schmitt and the other Hourly Employees all their unpaid wages, liquidated damages, treble damages, monthly statutory

damages, attorneys' fees, costs, expenses, and any other penalties available under the FLSA, IMWL, and IWPCA;

(i)     An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

(j)     All such other and further relief to which Schmitt and the other Hourly Employees may show themselves to be justly entitled.


Dated: January 23, 2025.                         Respectfully submitted,

**BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP**

By: */s/ Dana L. Sullivan*
Dana L. Sullivan
Oregon Bar No. 944834
921 SW Washington Street, Suite 516
Portland, Oregon 97205
503.974.5015 – Telephone
dana@baaslaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR SCHMITT & THE HOURLY EMPLOYEES**